IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

FREDERICK SCHUSTER and
SONJA M. BLAIR,

      Plaintiffs,　　　　　　　　　　　12-cv-00333
　　　　　　　　　　　　　　　　　　　　　　　**ELECTRONICALLY FILED**
  v.

TOWNSHIP OF NORTH SEWICKLEY,
BRYAN LANDMAN, JEFFERY BECZE,
SCOTT BLAIR, and REBECCA BLAIR,

      Defendants.

### MEMORANDUM ORDER RE: DEFENDANTS' RENEWED MOTIONS TO DISMISS (DOC. NOS. 34 AND 36)

**I. Introduction**

Presently before this Court are two Motions to Dismiss. Defendants Scott and Rebecca Blair ("Blair Defendants") filed a Renewed Motion to Dismiss Plaintiffs Frederick Schuster and Sonja M. Blair's ("Plaintiffs'") Second Amended Complaint. Doc. No. 36. In addition, the Township of North Sewickley and two of its police officers, Bryan Landman and Jeffery Becze ("Township Defendants") filed a separate Renewed Motion to Dismiss. Doc. No. 34.

Previously, on June 11, 2012, this Court entered a Memorandum Opinion addressing both the Blair Defendants' and the Township Defendants' prior Motions to Dismiss all three counts of Plaintiffs' Amended Complaint.[1] Doc. No. 28. In that Opinion, this Court granted Defendants' Motions and dismissed Plaintiffs' claims without prejudice. With leave of Court, Plaintiffs subsequently filed a Second Amended Complaint on June 22, 2012, asserting the following two claims, in addition to those set forth in the Amended Complaint: malicious prosecution under

---

[1] Plaintiffs' Amended Complaint alleged three counts: malicious prosecution under § 1983 (Count I), conspiracy to violate Plaintiffs' civil rights under § 1985 (Count II), and intentional infliction of emotional distress under Pennsylvania law (Count III). Doc. No. 5, ¶¶ 52-80.

Pennsylvania State Common Law (Count II), and violation of First Amendment rights under 42 U.S.C. § 1983 (Count III).[2]  Doc. No. 33.  The Defendants have since moved to dismiss all five counts of Plaintiffs' Second Amended Complaint.[3]  For the reasons that follow, the Blair Defendants' Motion to Dismiss (Doc. No. 36) and the Township Defendants' Motion to Dismiss (Doc. No. 34) will be **GRANTED**.

**II. Statement of Facts**

As in the first Memorandum Opinion on the Blair Defendants' and the Township Defendants' Motions to Dismiss, Plaintiffs' allegations are taken as true and all reasonable inferences are drawn in their favor.  *See Fowler v. UPMC Shadyside,* 578 F.3d 203, 210 (3d Cir. 2009).  Although Plaintiffs' Second Amended Complaint asserts two additional claims, the substance of Plaintiffs' Second Amended Complaint generally remains the same as the Amended Complaint.[4]

The only substantive factual additions in Plaintiffs' Second Amended Complaint that differ from allegations in Plaintiffs' Amended Complaint are as follows: (1) Defendants conspired to deprive Plaintiffs of their civil rights, motivated by both racial animus, stemming

---

[2] Although Plaintiffs did not enumerate a § 1983 civil rights claim in their Amended Complaint, Plaintiffs addressed their § 1985 claim solely under § 1983 in Plaintiffs' Brief in Support of Plaintiffs' Responses to Defendants' Motions to Dismiss Plaintiffs' Amended Complaint. Doc. No. 25.

[3] Plaintiffs' Second Amended Complaint alleges five counts: malicious prosecution under 42 U.S.C. § 1983 (Count I); malicious prosecution under Pennsylvania state common law (Count II); violation of Plaintiffs' civil rights under § 1983 (Count III); conspiracy to interfere with Plaintiffs' civil rights under § 1985 (Count IV); and intentional infliction of emotional distress (Count V).

[4] For a detailed description of Plaintiffs' original statement of facts, see Doc. No. 28.  The Court incorporates its previous Memorandum Opinion and, where applicable, will refer to specific sections.

from Plaintiffs' German ancestry, and class animus, because Plaintiffs "are not originally from the Township of North Sewickley, and are viewed as outsiders by the Defendants to the point that there is animus . . . ." (Doc. No. 33 ¶ 73); and (2) as a result of Defendants' alleged malicious prosecution, Plaintiff Frederick Schuster ("Schuster") incurred $26,280.00 in legal expenses and costs, and is unable to freely associate with whom he wishes. *Id.*, ¶ 66-97.

Additionally, Plaintiffs attempt to support their malicious prosecution claim by providing more background information regarding the events that transpired between the parties. *Id.*, ¶¶ 19-78. Plaintiffs aver that Defendant Bryan Landman ("Landman") repeatedly told Plaintiff Schuster to stay away from Plaintiff Sonja Blair's business property, and that if he did so, all charges against Schuster would be dropped. *Id.*, ¶¶ 77-78. Furthermore, Plaintiffs aver that they "were not able to move about the Blair Nursing Home properties without fear of Schuster being falsely charged with a crime." *Id.*, ¶ 70. Plaintiffs allege that Plaintiff Schuster was afraid to associate with Plaintiff Blair because he did not want to be falsely charged with additional crimes (*Id.*, ¶ 48); however, the following paragraphs outline the numerous ways in which Plaintiffs, in fact, continue to associate. *Id.*, ¶¶ 49-84.

Plaintiffs attempt to strengthen their conspiracy claims by stating that it is their belief that Defendants met to conspire against Plaintiffs for the purpose of depriving their civil rights because they observed Defendant Becze visiting Defendant Scott Blair's property, where he remained for hours. *Id.*, ¶¶ 71-72. Plaintiffs also assert that the Blair Defendants and their families, and Defendant Landman and his family, are involved in the municipal activities of the Township of North Sewickley. *Id.*, ¶ 118.

In order to support the intentional infliction of emotional distress claims, Schuster alleges unbearable stress and reoccurring panic attacks, requiring him to meet with a counselor

on a weekly basis. *Id.*, ¶ 134 Further, both Plaintiffs experienced instances of insomnia. *Id.*, ¶ 135. Defendants' harassment of Plaintiffs continues to date. *Id.,* ¶¶ 80-84.

**III. Standard of Review**

In considering a Rule 12(b)(6) motion, Federal Courts require notice pleading, as opposed to the heightened standard of fact pleading. Fed. R. Civ. P. 8(a)(2) requires only "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds on which it rests.'" *Bell Atlantic Corp. v. Twombly,* 550 U.S. 554, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957).

Building upon the landmark United States Supreme Court decisions in *Twombly* and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), the United States Court of Appeals for the Third Circuit explained that a District Court must undertake the following three steps to determine the sufficiency of a complaint:

> First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." Third, "whe[n] there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." This means that our inquiry is normally broken into three parts: (1) identifying the elements of the claim, (2) reviewing the Complaint to strike conclusory allegations, and then (3) looking at the well-pleaded components of the Complaint and evaluating whether all of the elements identified in part one of the inquiry are sufficiently alleged.

*Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011) (quoting *Iqbal*, 556 U.S. at 675, 679).

The third step of the sequential evaluation requires this Court to consider the specific nature of the claims presented and to determine whether the facts pled to substantiate the claims

are sufficient to show a "plausible claim for relief." *Fowler*, 578 F.3d at 210. "While legal conclusions can provide the framework of a Complaint, they must be supported by factual allegations." *Id.* at 210-11; *see also Malleus,* 641 F.3d at 560.

This Court may not dismiss a Complaint merely because it appears unlikely or improbable that Plaintiff can prove the facts alleged or will ultimately prevail on the merits. *Twombly*, 550 U.S. at 563, n.8. Instead, this Court must ask whether the facts alleged raise a reasonable expectation that discovery will reveal evidence of the necessary elements. *Id.* at 556. Generally speaking, a Complaint that provides adequate facts to establish "how, when, and where" will survive a Motion to Dismiss. *Fowler*, 578 F.3d at 212; *see also Guirguis v. Movers Specialty Servs., Inc.*, 346 Fed. App'x. 774, 776 (3d Cir. 2009).

In short, a Motion to Dismiss should not be granted if a party alleges facts, which could, if established at trial, entitle him/her to relief. *Twombly*, 550 U.S. at 563, n.8.

## IV. Discussion

### A.  Section 1983 Malicious Prosecution Claim (Count I)

Plaintiffs' new factual averments, which mainly provide further details regarding the events that transpired between the parties, again fail to demonstrate a deprivation of liberty consistent with a Fourth Amendment seizure, as required by the United States Court of Appeals for the Third Circuit in order to support a claim for a Section 1983 malicious prosecution. *DiBella v. Borough of Beachwood*, 407 F.3d 599, 603 (3d Cir. 2005) (holding that prosecution alone, without arrest or *significant* pretrial restrictions, does not constitute a Fourth Amendment government seizure for purposes of a § 1983 malicious prosecution action).

Plaintiffs' Second Amended Complaint appears to allege two additional bases in an attempt to establish a Fourth Amendment seizure. First, Plaintiffs aver that Defendants' alleged

malicious prosecution discouraged them from associating with each other, restricting their movements. However, Plaintiffs' Second Amended Complaint details numerous ways in which Plaintiffs, in fact, continue to associate, demonstrating no significant restriction of their liberty. Doc. No. 33, ¶¶ 49-84. Second, Plaintiffs assert that Schuster has incurred legal fees and costs in the amount of $26,280.00 as a result of fighting the charges against him. However, such expenses do not rise to the level of a Fourth Amendment deprivation of liberty. *See Barber v. Pennsylvania Dept. of Agric.,* 2010 WL 1816760, 5 (W.D. Pa. May 3, 2010) (Ambrose, J.) (finding no Fourth Amendment seizure when Plaintiffs received citations by mail, incurred legal fees and expenses, and were deprived of personal property); *see also, Crawford v. Miller,* 2005 WL 2030478 (M.D. Pa. Aug. 4, 2005) (rejecting a § 1983 malicious prosecution claim where Plaintiff claimed only a deprivation of personal property because such deprivation did not constitute a Fourth Amendment seizure) (citing *Estate of Smith v. Marasco*, 318 F.3d 497, 521 (3d Cir. 2003)). Therefore, Plaintiffs cannot maintain a § 1983 claim for malicious prosecution under the Fourth Amendment. Accordingly, Count I of Plaintiffs' Second Amended Complaint will be dismissed. The Court incorporates its previous analysis of this claim found in Doc. No. 28, 3-4.

## B. First Amendment Claim (Count III)

Count III of Plaintiffs' Second Amended Complaint alleges a claim for violation of Plaintiffs' First Amendment right to freely associate with each other.[5] In order to establish a retaliation claim pursuant to the First Amendment, Plaintiffs must demonstrate: (1) that they engaged in a protected activity; (2) that Defendants responded with retaliation; and (3) that the

---

[5] Plaintiffs characterize Count III of their Second Amended Complaint as a First Amendment retaliation claim in their Brief in Opposition. Doc. No. 43, 15. Therefore, the Court addresses this claim accordingly.

protected activity was the cause of the retaliation. *Estate of Smith,* 318 F.3d at 512. The United States Court of Appeals for the Third Circuit has stated that the First Amendment guarantees two types of protected associations: "(1) associations founded on intimate human relationships in which freedom of association is protected as a fundamental element of liberty, and (2) associations formed for the purpose of engaging in activities protected by the First Amendment, such as the exercise of speech, assembly, and religion." *Rode v. Dellarciprete*, 845 F.2d 1195, 1204 (3d Cir. 1988) (holding that mere social relationships, such as those between extended family members, or friends, are not protected under the First Amendments' guarantee of freedom of association).

Plaintiffs fail to state a claim for violation of their right to freely associate because they do not allege that Plaintiffs' rights of "intimate association" were plausibly impaired by Defendants as a result of retaliation. Because Plaintiffs' association is not formed for the purpose of engaging in activities protected by the First Amendment, Plaintiffs must allege an interference with association founded on an "intimate human relationship" to sufficiently plead a § 1983 First Amendment Claim. Although Plaintiffs allege that Defendants interfered with their social relationship, they fail to allege the requisite interference with an "intimate human relationship." Doc. No. 33, ¶ 112.

Furthermore, Plaintiffs have not established that their right to intimately associate was the impetus for Defendants' alleged retaliation. Plaintiffs argue that "it is clear that the Defendants knew and intended that the effects of their actions would infringe upon Plaintiffs' rights to associate . . . ." Doc. No. 43, 17. Plaintiffs' additional factual averments include two statements by Landman warning Schuster to stay away from Plaintiff Blair's business properties. Doc. No. 33, ¶ 77-78. However, these averments are insufficient to establish any plausible basis from

7

which it can be demonstrated that Plaintiffs' "intimate human relationship" was the impetus for Defendants' alleged retaliation.  Importantly, Schuster was found guilty of one of three charges Plaintiffs claim to be unfounded, and this Court has determined that Plaintiffs cannot maintain a § 1983 malicious prosecution action, as discussed in Section III. A.

Again, Plaintiffs have only asserted vague complaints regarding the actions of both the Township Defendants and the Blair Defendants, without specificity regarding how the Township Defendants and the Blair Defendants violated Plaintiffs' First Amendment right to associate.  For example, Plaintiffs allege that on October 18, 2010, "Schuster was afraid to go around Rebecca Blair because he did not want to be falsely charged with additional crimes." *Id.*, ¶ 48.  However, the following paragraph discusses Sonja Blair and Schuster traveling together to conduct maintenance on the Blair Nursing Home Property. *Id.,* ¶ 49.  Furthermore, despite Plaintiffs' claims that Defendants' actions have discouraged their association, Plaintiffs' Second Amended Complaint outlines numerous ways in which Plaintiffs continue to associate, as further discussed in Section III. A.  As a result, this Court will dismiss Count III of Plaintiffs' Second Amended Complaint.

   *C. Conspiracy Claim (Count IV)*

Plaintiffs again fail to plead sufficient facts to support a § 1983 Civil Conspiracy claim.  This Court agrees with the Township Defendants that there are no facts which support allegations of a conspiracy as Plaintiffs continue to cite only vague claims of social and business relationships between Township Defendants and Blair Defendants.  Doc. No. 35.  Among Plaintiffs' new factual averments is an allegation that Defendant Becze drove his personal vehicle to Defendant Blair's personal lake property, where he remained for hours.  Doc. No. 33, ¶ 72.  Plaintiffs, however, fail to allege that Defendant Blair was even present at the property.

Plaintiffs also add that "Landman, and his family, and the Blairs, and their family, are involved in the municipal activities of the Township of North Sewickley." *Id.*, ¶ 118. However, Plaintiffs fail to assert that this alleged relationship resulted in a conspiracy to deprive Plaintiffs of their civil rights or that they suffered any adverse actions as a result of the mutual involvement by these families in Township activities. These additional vague and imprecise averments fail to demonstrate a plausible claim under *Iqbal*, as this Court discussed in its prior Memorandum Opinion. Doc. No. 28. Moreover, this Court determined that Defendants' alleged malicious prosecution did not constitute a violation of Plaintiffs' civil rights, as discussed in Section III. B. Without such a violation, a claim for conspiracy to violate Plaintiffs' civil rights cannot proceed. As a result, this Court will dismiss Count IV of Plaintiffs' Second Amended Complaint.[6] The Court incorporates its previous analysis of this claim found in Doc. No. 28, 4.

    *D. Intentional Infliction of Emotional Distress (Count V)*

Plaintiffs' new factual averments are not sufficient to demonstrate a claim for intentional infliction of emotional distress ("IIED"). Decisively, the core of a sufficiently-plead IIED claim is an averment of outrageous conduct on the part of the tort-feasor. Plaintiffs' Second Amended Complaint attempts to plead additional facts aimed to demonstrate that the consequences of their emotional distress were unbearable and severe. However, Plaintiffs again fail to aver any behavior that could be considered so extreme in nature as to be atrocious or utterly intolerable in a civilized society. Indeed, Plaintiffs' allegations regarding the conduct of both the Township Defendants and the Blair Defendants are the same in the Second Amended Complaint as in the Amended Complaint. Consequently, Plaintiffs' claim for IIED necessarily fails. The Court

---

[6] Because Plaintiffs' have not plead sufficient facts to support a § 1983 civil conspiracy, it is unnecessary for this Court to discuss Plaintiffs' additional averments regarding racial/class animus.

incorporates its previous analysis of this claim, as found in Doc. No. 28, 4-5, and will dismiss Count V of Plaintiffs' Second Amended Complaint.

   *E.  Pennsylvania State Common Law Malicious Prosecution (Count II)*

Because Plaintiffs' only remaining claim is a state common law based claim of Malicious Prosecution and Malicious Abuse of Process, this Court may relinquish jurisdiction. Therefore, the Court declines to exercise supplemental jurisdiction over Count II, the remaining state common law claim. The state courts are intimately familiar and regularly adjudicate such claims. Accordingly, said state law claim will be dismissed pursuant to 28 U.S.C. § 1367(c)(3), albeit without prejudice to Plaintiffs' ability to re-file these claims in state court. Also, the dismissal of Plaintiffs' state law claim should not work to Plaintiffs' disadvantage. *See* 28 U.S.C. § 1367(d) (providing for at least a thirty-day tolling of any applicable statute of limitation after the claim is dismissed so as to allow Plaintiff time to re-file her state law claims in state court).

**V. Order**

And now, this 11th day of July, 2012, for the reasons set forth in this Memorandum Order, IT IS HEREBY ORDERED that:

(1) The Blair Defendants' Motion to Dismiss (Doc. No. 36) is **GRANTED**;

(2) The Township Defendants' Motions To Dismiss (Doc. No. 34) is **GRANTED**;

(3) Counts I-V of Plaintiffs' Second Amended Complaint are **DISMISSED WITH PREJUDICE**; and

(4) The Clerk of Court shall mark this **CASE CLOSED.**

                                        s/ Arthur J. Schwab
                                        Arthur J. Schwab
                                        United States District Judge

cc:   All Registered ECF Counsel and Parties